## Davis's Estate.

*Wills—Construction—Meaning of word "securities"—Gift to be construed according to context.*

Testator gave his trustees all his "stocks, bonds and other corporate securities," and the residue to his children. It was apparent from the context that the testator did not use the word "securities" in its technical sense, but as equivalent to "investments." One of the assets of the estate was an account on the books of a land company, showing a sum of money due by it to testator: *Held,* this debt was an investment and was included in the gift of "corporate securities" to the trustees.

Adjudication. Account of Henry Lamont Davis, Eleanor Bushnell Cooke and Germantown Trust Company, executors. O. C. Phila. Co., April T., 1921, No. 460.

*Bevan A. Pennypacker* (for *Morgan, Lewis & Bockius*), for accountants.

*James Collins Jones* and *John Stokes Adams,* for Eleanor Bushnell Cooke.

HENDERSON, J., Aug. 1, 1921.—The testator died June 30, 1919, leaving a will duly probated July 15, 1919. . . .

Under paragraph four of his will the testator provided as follows:

"Item. I give, devise and bequeath to my Trustees hereinafter named, all my stocks, bonds and other corporate securities to be transferred to them by my Executors, as soon after my decease as it can conveniently be done."

And in the next paragraph he further provided:

"Item. After the payment of all my just debts and the foregoing bequests, I give, devise and bequeath to my son, Henry Lamont Davis, and to my daughter, Eleanor Bushnell Cooke, share and share alike, all the rest, residue and remainder of my estate, consisting of real estate of whatsoever character and wheresoever situated, mortgages, life insurance, personal notes, cash and other property, excepting only thereout, nevertheless, the stocks, bonds and other corporate securities owned by me, and which I have bequeathed to my Trustees under the preceding items of this my Will."

The inventory and account shows there was due him by the School Lane Land Company the sum of $133,227.81, of which the land company had a book account, a copy of which is annexed to this adjudication.

The question was submitted to me as to whether this asset belonged to the trustees or should be awarded under the residuary clause. The question is presented by the accountants as if this decedent owned a book account which, under Sloan's Estate, 2 Del. Co. Reps. 309, and Stark's Will, 134 N. W. Repr. 389, could be held to be a "security." In Williams on Executors (11th ed.), 944, it is said: "In re Rayner (1904), 1 Ch. 176, Farwell, J., said that the word 'securities' had the well defined primary meaning of 'money secured on property.'"

In Sloan's Estate the book account existed on the books of a copartnership of which he was a member. Here, the account is on the books of the land company, and, so far as the decedent is concerned, is merely a debt due his estate. In the view I take of this question, it is not necessary to decide if a book account is a "security."

In the sixth item of the will it is provided:

"Said trustees or a majority of them, and their successors, are authorized and empowered to sell any of the before-mentioned *property* or securities and to invest and re-invest as in their judgment shall be for the good of this trust; provided, however, that all and every purchase or sale in the execution of this trust herein declared shall require the sanction of the corporate trus-

tee, and at least one other Trustee; they are authorized to buy and hold real estate, to sell and give title to the same without any responsibility upon the purchaser for the application of the proceeds thereof. In their *investments* it is my desire that they be conservative, but they are not bound to what are known as 'legal investments' for trusts."

And in the last item of the will it is provided:

"The corporate trustee shall be the custodian of the *securities* and papers belonging to the Estate and Trust, but the other members shall have full and proper access for the examination of all books, accounts, papers and securities."

The testator has not used the word "securities" in a technical sense. From the context I gather that he used this word in the sense of "investments."

Corporate stocks are not securities in the technical sense: 2 Jarman on Wills (6th ed.), 1303. While the testator has enumerated all the kinds of property owned by him, none of the terms so used fits the indebtedness of the land company, unless the word security in the sense of an investment can be held to do so. When the testator confers the power of sale upon his trustees, he empowers them "to sell any of the before mentioned property or securities" and he then authorizes them "to buy and hold deal estate." And he then adds: "In their investments it is my desire that they be conservative, but they shall not be bound to what are known as 'legal investments.'" And after giving this broad power as to investments, including the purchase of real estate, he directs that the corporate trustee shall be the custodian of the securities. Here we have the term "securities" used to cover real estate, which, in turn, is authorized as an investment.

In re Rayner (1904), 1 Ch. 176, a will very similar to this one was construed. Therein the decedent, a broker, after giving a trust legacy, declared that "all moneys liable to be invested under this my will may be invested in such securities as my trustees in their absolute discretion shall think fit; and I authorize my trustees to continue or leave any moneys invested at my death in or upon the same securities." In holding that the context showed the word "securities" to be used in the sense of investments, Lord Justice Vaughan Williams said (page 187):

"The question the court has to decide in this case is, What is the meaning of the word 'security' in this will?

"In my judgment, in this will the meaning of that word, or rather of the word 'securities,' is determined, for reasons which I will presently discuss, by the context of the will, and it is unnecessary, therefore, to discuss generally what is the meaning of the word 'security,' either its common and ordinary meaning at the date of the will, or what is the meaning of the words 'strict and primary sense' in Proposition II, in Wigram V.-C.'s Treatise on Extrinsic Evidence; for it is apparent from the context of this will that the testator has not used the word 'securities' in what Farwell, J., holds to be its 'strict and primary' sense—but in what may be called its 'popular sense'— which I may observe is a sense in which I am of opinion, without the assistance of either dictionary or the evidence of commercial or other witnesses, it is applied habitually by those who have to deal with property transferable by the assignment of *indicia* of property, be they commercial men or noncommercial men, lawyers or laymen; and a sense in which it has been used daily in *The Times* since the year 1886, and in divers Acts of Parliament.

"Now, the reasons why I have formed this conclusion as to the meaning of the word 'securities' in this will are these. Take this passage in the will: 'And I authorize my trustees to continue or leave any moneys invested at my

1 D. & C.

death in or upon the same securities.' I think that in this passage 'the same securities' obviously means 'the same investments;' and I think that the effect of using the words 'moneys invested' and the word 'securities' to cover the same subject-matter is not to narrow down or limit the natural sense of the words 'moneys invested,' but to extend what Farwell, J., considers to be the 'strict and primary' meaning of the word 'securities,' so as to cover anything which, according to the strict and primary meaning of the words 'moneys invested,' would be covered or connoted by those words; and, in my judgment, property in the shape of railway shares falls within the meaning, both of the words 'moneys invested' and of the word 'securities.' "

A similar question arose In re Gent and Eason's Contract (1905), 1 Ch. 386, 389, wherein Mr. Justice Farwell said:

"The testator has authorized his trustees to lay out and invest the moneys coming to their hands under the trust of his will in the purchase, or upon mortgage, of freehold or leasehold properties in England, or in or upon the Government stocks or funds, or in or upon debentures or preferential stock of the Great Western Railway Company, the Midland Railway Company, or the London and North Western Railway Company, or in or upon any other investments in or upon which trustees are for the time being authorized or empowered by law to invest trust funds, with full power to vary and transpose such securities for other securities of any of the descriptions hereinbefore authorized. Now, the Court of Appeal In re Rayner had to consider the meaning of the word 'securities' in an investment clause in a will, and Romer, L. J., says: 'The word is a flexible one, and I recognize that it is largely used in a wider or different sense, and in particular is widely used as a synonym for 'investments.' ' Now, it is quite plain to my mind that in the present case the testator has used the word 'securities' as a synonym for 'investments;' he authorizes his trustees to invest in preferential stock of three railway companies and speaks of other trustee investments, and then authorizes the variation of such securities for any of the securities before authorized. Railway preference stocks are not 'securities' and 'security' as interchangeable terms. It is clear, therefore, reading the word 'securities' as synonymous with 'investments,' that there is here a trust to invest moneys in the purchase or mortgage of land, or in or upon the preference stock of railway companies, or in or upon any other investments allowed by law to trustees, with a power to vary and transpose such investments for other investments of a like nature; and I have no doubt that, under this power to vary and transpose 'such securities,' i. e., 'investments,' the trustees are authorized to resell real estate that they have purchased as an investment. I do not share Mr. Fellows's horror as a conveyancer that the will has not the usual trust for reconversion of purchased real estate. It is only reasonable to suppose that a testator would not authorize his trustees to convert his own real estate as they thought fit if he did not at the same time give them a like power to turn back into personalty that which was made realty by their act under the investment clause. There will be a declaration that the trustees have power to sell the purchased freeholds and to give a good discharge for the purchase money. The purchasers must pay the costs of this summons."

I, therefore, reach the conclusion that when the testator gave to his trustees "all my stocks, bonds and other corporate securities," he used the word "securities" in the sense of "investments," and as this debt due from the land company is a corporate investment, it should be awarded to the trustees.

There was no objection to the account, which shows a balance of principal, after the payment of pecuniary and specific bequests, of $952,828.40, of which

stocks, bonds and corporate securities, in accordance with this adjudication, are awarded to be retained by the accountants as trustees for the uses and purposes declared by the testator's will, and the balance then remaining is awarded to be divided equally between Eleanor Bushnell Cooke and Henry Lamont Davis. . . . .

And now, Aug. 1, 1921, the account is confirmed *nisi*.

NOTE.—Exceptions were filed but subsequently withdrawn.